UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| KALE FLAGG | CIVIL ACTION |
|---|---|
| v. | NO. 14-0852 |
| DR. DENISE ELLIOT, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is a motion to dismiss for failure to state a claim by Stryker Corporation and Memometal Inc., USA. For the reasons that follow, the motion is GRANTED.

**Background**

This medical malpractice and medical device product liability lawsuit arises out of foot surgery and subsequent surgeries to replace broken toe implants.

On March 23, 2012 Mr. Flagg underwent foot surgery in which implants were placed in his second and third toes. Later that year on December 10, 2012, when Dr. Denise Elliot examined Mr. Flagg, x-rays revealed that the implants placed in his toes had broken. A week later, Dr. Elliot removed the broken implants and placed pins in the toes. As a result of complications from the December 17 surgery, Mr. Flagg underwent two additional surgeries.

In early December 2013 Mr. Flagg filed an administrative complaint with the Louisiana Patient's Compensation Fund, alleging medical malpractice against West Jefferson, Dr. Elliot, and the Foot and Ankle Center, LLC; he requested a medical panel review of

1

his claims.  Several days after adding the Foot and Ankle Center as a defendant in his administrative complaint with the Louisiana Patient's Compensation Fund, on December 13, 2013 Flagg sued Dr. Denise Elliot, Foot and Ankle Center, Stryker Corporation, Memometal Inc., USA, Jefferson Parish Hospital Service District No. 1, d/b/a West Jefferson Medical Center, and various fictitious insurance companies in state court in Jefferson Parish.[1]  It is alleged that Stryker and Memometal manufactured the "defective" toe implants.  The plaintiff alleges that he is disfigured, unable to walk properly, in constant pain, and has suffered mental anguish and emotional distress; he seeks to recover past, present, and future medical expenses, pain and suffering, mental anguish, lost wages, loss of service and loss of society.  On April 11, 2014 Stryker and Memometal removed the lawsuit to this Court, invoking this Court's diversity jurisdiction.[2]

Thereafter the defendants urged the Court to dismiss the

---

[1]The plaintiff alleges that Dr. Elliot was professionally negligent in performing the surgeries and in delaying the proper diagnosis and treatment of the complications caused by the surgeries.  As for West Jefferson Medical Center and the Foot and Ankle Center, the plaintiff alleges that each are liable for hiring staff and employees that violate the requisite standard of care and that each medical center failed to investigate the medical devices used by the hospital staff.

[2]Stryker and Memometal urged the Court to disregard for removal purposes the citizenship of West Jefferson, the Foot and Ankle Center, and Dr. Elliot, all local defendants.  Stryker and Memometal insisted that the plaintiff has no reasonable basis to recover against these defendants unless and until administrative remedies are exhausted.

plaintiff's claims: West Jefferson sought dismissal of the plaintiff's claims on the ground that he failed to exhaust his administrative remedies[3] and Stryker and Memometal sought dismissal of the plaintiff's product liability claims for failure to state a claim upon which relief may be granted. On June 16, 2014 the Court denied the plaintiff's motion to stay and dismissed without prejudice as premature his claims against West Jefferson, Dr. Elliot, and the Foot and Ankle Center pending completion of the medical review panel. That same day, the Court granted Stryker and Memometal's motion to dismiss, but allowed the plaintiff an opportunity to amend his deficient product liability allegations. On July 7, 2014 the plaintiff filed an amended complaint. Contending that the plaintiff has failed to cure his defective product liability claims, Stryker and Memometal now seek to dismiss with prejudice the plaintiff's amended claims for failure to allege facts sufficient to establish a prima facie case of liability under the Louisiana Products Liability Act.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely

---

[3] As an alternative to dismissal, the plaintiff requested that the Court stay his claims against West Jefferson, Dr. Elliot, and the Foot and Ankle Center pending completion of the medical review panel.

granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"'[T]he central issue [in deciding a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'" Gentilello v. Rege, 627 F.3d 540, 543-44 (5th Cir. 2010) (citation omitted). To survive a Rule 12 motion to dismiss or for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S. Ct. at 1949. "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005)(citation omitted).

II.
*A.*

The only issue presented by the defendants' motion is whether or not the plaintiff, by amending his defective state court petition, has stated a plausible claim for relief under the Louisiana Products Liability Act as to Stryker and Memometal.

The Louisiana Products Liability Act provides the exclusive remedy against product manufacturers for injuries caused by their products. La.R.S. 9:2800.52; Demahy v. Schwarz Pharm., Inc., 702 F.3d 177, 182 (5th Cir. 2012). A plaintiff must establish four elements to succeed on his claim under the LPLA:

> (1) that the defendant is the manufacturer of the product; (2) that the plaintiff's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 261 (5th Cir. 2002). The plaintiff must carry his burden of showing that a product was unreasonably dangerous through one of four theories: (1) defective design; (2) defective construction or composition; (3) because of an inadequate warning; or (4) because of a breach of express warranty. La.R.S. 9:2800.54(B)(1-4).

5

*B.*

Stryker and Memometal contend that, notwithstanding the plaintiff's amended pleading, the plaintiff has failed to state a claim against them under any of these theories. The plaintiff counters that his amendment cures the deficiencies of his prior pleading and that, even if not, dismissing his complaint before an opportunity for discovery would be prejudicial. The Court disagrees; the plaintiff still pleads no facts that would allow the Court to infer that Stryker and Memometal, the two remaining defendants, are liable for manufacturing an unreasonably dangerous product.

As before, the factual allegations contained in the plaintiff's state court petition are:

> 11.
> On December 10, 2012, during a visit to offices of Defendants, Dr. Denise Elliot and Foot and Ankle Center, plaintiff discovered the implants in his toes had broken. On December 17, 2012, Dr. Elliot removed the implants and placed pins, and has since operated on Mr. Flagg's toes twice more in January 2013 due to complications from the December 17th surgery.

By his amended complaint, the plaintiff reiterates the entirety of his prior allegations[4] but adds:

---

[4]In granting the defendants' motion to dismiss on June 16, 2014, this Court observed:
> Beyond these allegations, the plaintiff resorts to boilerplate devoid of factual support in his attempt to allege in what way the toe implants are unreasonably dangerous; he alleges that Stryker and Memometal, the alleged manufacturers of "the defective

6

18.
Plaintiff's injuries were caused by the defective and unreasonably dangerous product manufactured and sold by Stryker Corporation, or in the alternative Memometal Inc. USA, in the following no-exclusive particulars, to wit:
 a) Manufacturing and selling a product which is unreasonably dangerous in construction and/or composition; particularly a different alloy other than the Memometal NiTinol would have a better fatigue life and/or product life, the body temperature activated shape

---

implants" are liable for "manufacturing and selling a product which is unreasonably dangerous in construction and/or composition"; "manufacturing and selling a product which is unreasonably dangerous in design"; "failing to provide adequate warning"; "manufacturing and selling a product that is unreasonably dangerous because it does not conform to an express warranty of the manufacturer". Nothing but labels and conclusions.
 The plaintiff's allegations are technically deficient. The plaintiff pleads no facts that would allow the Court to infer that the defendants are liable. Notably, the plaintiff fails to identify the nature of the defect; suggest how the toe implants deviated from their intended design; allege the existence of a reasonable alternative design capable of preventing Mr. Flagg's injuries; identify how the characteristic made the implants unreasonably dangerous; allege facts concerning what characteristic the defendants failed to warn about, or allege that but for the inadequate warning the implanting surgeon would not have used the implants; allege any facts regarding how the implants caused the alleged injuries; suggest whether Stryker or Memometal failed to warn his doctor of a particular risk; allege facts suggesting that an express warranty induced the plaintiff or his doctor to use the device, or what the express warranty represented about the device; or otherwise state facts that would plausibly support a conclusion that any failure to warn caused Mr. Flagg's injury.
See Order and Reasons dated June 16, 2014, at page 12-13.

7

memory of the alloy used interfered and negatively influenced the fatigue life and/or product life expectancy of the implant;

    b) Manufacturing and selling a product which is unreasonably dangerous in design; particularly the shape and incorrect sizing contributed to the fracture of the implant and difficulty in removal once the implants broke;

    c) Failing to provide adequate warnings regarding product life expectancy and limitation of movement once implants are placed as Plaintiff's implants failed within months of placement;

    d) Manufacturing and selling a product that is unreasonably dangerous because it does not conform to an express warranty of the manufacturer as to expected product life, comprehensive size range of implants, and ability to move digits once implants were placed.

    e) Any and all other particulars which may appear through discovery and further examination of the product.

The Court considers whether Mr. Flagg has alleged a right to relief under the LPLA that is plausible on its face. The parties dispute whether these alleged facts comply with the pleading standards under Federal Rule of Civil Procedure 8(2)(a). The defendants insist that the plaintiff still fails to allege that the toe implants were unreasonably dangerous through any one of the four theories: (1) defective design; (2) defective construction or composition; (3) because of an inadequate warning; or (4) because of a breach of express warranty. The Court agrees.

1. Defective Design

A product's design is unreasonably dangerous only if the plaintiff demonstrates that, at the time the product left the manufacturer's control, "'[t]here existed an alternative design for the product that was capable of preventing the claimant's damage'

8

and that the danger of the damage outweighed the burden on the manufacturer of adopting the alternative design." Jacobsen v. Wyeth, LLC, No. 10-823, 2012 WL 3575293, at *6 (E.D. La. Aug. 20, 2012)(quoting La.R.S. § 9:2800.56).

In his amended complaint, Mr. Flagg alleges that the defendants' product was unreasonably dangerous in design "particularly the shape and incorrect sizing contributed to the fracture of the implant and the difficulty in removal once implants broke." The defendants contend that these conclusory allegations fail to satisfy federal pleading standards. The Court agrees. Not only does the plaintiff fail to identify the product at issue, but he fails to allege that an alternative design for the product (an implant of a different shape or size, perhaps) exists, that the alternative design was capable of preventing the plaintiff's injuries, and that the danger of the damage outweighed the burden on the defendants of adopting the alternative design.

2. Defective Construction or Composition

A defective construction claim provides a remedy for harm caused by a product defect "due to a mistake in the manufacturing process." Stahl, 283 F.3d at 263. In presenting a defective construction or composition theory of recovery under the LPLA, the plaintiff must prove that, "at the time the product left [the] manufacturer's control, [it] deviated in a material way from the manufacturer's specifications or performance standards for the

9

product or from otherwise identical products manufactured by the same manufacturer." La.R.S. § 9:2800.55.

With respect to the toe implants' allegedly defective construction or composition, the plaintiff now alleges "particularly a different alloy other than the Memometal NiTinol would have a better fatigue life and/or product life, the body temperature activated shape memory of the alloy used interfered and negatively influenced the fatigue life and/or product life expectancy of the implant." The defendants contend that these allegations fail to allege facts that, if proven, would demonstrate a mistake in the manufacturing process or how the device deviated from the intended design. The Court agrees.

The plaintiff's allegations, if proven, would demonstrate that a different alloy from the one used has a better fatigue life and more resilient shape memory, which would enhance the life expectancy of the product (such that it would not have broken so shortly after placement). However, at most, the plaintiff's allegations, if proven, suggest that a different product altogether should have been used, not that the device used deviated from its intended design. Complicating matters, the plaintiff still fails identify the toe implants product at issue (presumably the product at issue is composed of "Memometal NiTinol"). Absent factual allegations addressing how (or even simply *that*) the product deviated from Stryker's or Memometal's normal production standards,

the plaintiff fails to meet the plausibility standard.

   3.  Inadequate Warning and Breach of Express Warranty

To establish an inadequate warning claim, a plaintiff must show that: (1) the defendant failed to warn the plaintiff's doctor of a risk associated with the product that was otherwise unknown to the doctor; and (2) the failure to warn the doctor was both a cause in fact and the proximate cause of the plaintiff's injury. Stahl, 283 F.2d at 265-66.

Mr. Flagg alleges that the defendants failed to provide adequate warnings "regarding product life expectancy and limitation of movement once implants are placed as Plaintiff's implants failed within months of placement." Noticeably absent from these allegations is any suggestion that the defendants failed to warn the plaintiff's implanting physician of these particular risks, that these risks were unknown to Dr. Elliot, or that but for the allegedly inadequate warning, Dr. Elliot would not have used the implants. The plaintiff still fails to allege that the defendants' product was made unreasonably dangerous because it was not accompanied by adequate warnings.

Finally, the Court turns to the breach of express warranty claim. The plaintiff alleges that the defendants' toe implants fail to "conform to an express warranty of the manufacturer as to expected product life, comprehensive size range of implants, and ability to move digits once implants are placed." The defendants

contend that the plaintiff fails to allege facts suggesting that an express warranty induced the plaintiff or his doctor to use the device; an essential element of an LPLA breach of express warranty claim. La.R.S. 9:2800.58; Reed v. Biomet Orthopedics, Inc., No. 06-544, 2008 WL 4829958, at *8 (W.D.La. Aug. 8, 2005), aff'd, 318 Fed.Appx. 305 (5th Cir. 2009). The Court agrees. As before, the plaintiff's allegations are vague and conclusory;[5] he fails to allege facts suggesting that an express warranty induced the plaintiff or his doctor to use the defendants' particular toe implants, an essential element of a breach of express warranty claim.

The defendants' motion to dismiss is GRANTED. The plaintiff has already been granted one opportunity to amend and, although his allegations were marginally improved, he nevertheless failed to advance factual allegations that support a plausible claim for relief under the Louisiana Products Liability Act. Accordingly,

---

[5]Rotely listing "expected product life, comprehensive size range of implants, and ability to move digits after implants are placed", without any context, is an ineffectually unadorned attempt to meet the plausibility test. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted) (citing Twombly, 550 U.S. at 557).

the plaintiff's claims against Stryker and Memometal are hereby dismissed with prejudice.

New Orleans, Louisiana, September 10, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE